Annamarie QUELA, Shelby Mignault, Tabatha Irvin, and Michael Hakim, Plaintiffs,

v.

PAYCO–GENERAL AMERICAN CREDITS, INC. and Outsourcing Solutions, Inc., Defendants.

No. 99 C 1904.

United States District Court, N.D. Illinois, Eastern Division.

Feb. 17, 2000.

Andrew Jay Cohen, Law Offices of Andrew J. Cohen, Chicago, IL, Marshall J. Burt, Law Offices of Marshall J. Burt, Chicago, IL, for Plaintiffs.

James Stephen Poor, Beth Tracy Golub, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Defendants.

### MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Annamarie Quela, Shelby Mignault, Tabatha Irvin, and Michael Hakim ("Plaintiffs") sued Payco–General American Credits, Inc. and Outsourcing Solutions, Inc. ("Defendants"), alleging sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e *et seq.* ("Title VII"), harassment under the Cook County Human Rights Ordinance ("Ordinance"), assault, and battery.[1] Defendants filed a motion to dismiss the three state claims, which we grant in part and deny in part.

## RELEVANT FACTS [2]

In November 1997, Hakim began work as a collector at Payco, a debt collection company. Hakim alleges that, shortly after he began working at Payco, Defendants, through Payco manager, George Chaharbakhski, and other employees, began verbally and physically harassing him because of his perceived sexual orientation. As a result, Hakim filed a charge with the Cook County Human Rights Commission ("Commission"), alleging that Defendants discriminated against him in violation of the Ordinance. The Commission granted him the right to proceed to civil court in accordance with the Ordinance. Subsequently, Hakim brought the claim as Count III in Plaintiffs' amended complaint filed in this Court. In addition, he presents claims for assault (Count V) and battery (Count IV). Currently pending before the Court is Defendants' motion to dismiss Counts III, IV, and V.

## ANALYSIS

### I. Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure does not test whether the plaintiff will prevail on the merits, but instead whether the plaintiff has properly stated a claim for which relief may be granted. *Pickrel v. City of Springfield, Ill.*, 45 F.3d 1115, 1118 (7th Cir.1995). In ruling on a motion to dismiss, the court must presume all of the well-pleaded allegations of the complaint to be true. *Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). We also presume "that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. National Wildlife*

*Fed'n,* 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Dismissal under Rule 12(b)(6) is proper only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Panaras v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786, 791 (7th Cir.1996).

### II. Count III: Discrimination under the Ordinance

In Count III, Hakim alleges discrimination under the Ordinance, based on perceived sexual orientation. Defendants move to dismiss this claim, arguing that Cook County's attempt to vest original subject matter jurisdiction over claims involving the Ordinance in the civil courts was an unconstitutional attempt to exercise authority over state-wide institutions. Specifically, Defendants assert that the Ordinance provision authorizing Hakim to bring his claim before this Court via our supplemental jurisdiction over certain state law claims is unconstitutional because it places a prohibited burden on the judicial system.

Hakim argues that the Ordinance is a valid exercise of Cook County's home rule authority under Section 6(a) of Article VII of the 1970 Illinois Constitution. That section of the 1970 Constitution provides that:

> Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt.

This constitutional grant of power to home rule units is "broad and imprecise and . . . purposely left without definition." *Ampersand, Inc. v. Finley*, 61 Ill.2d 537, 338 N.E.2d 15, 17 (1975); Ill. Const. art. VII,

---

1. Hakim, alone, alleges harassment under the Ordinance, assault, and battery.

2. We include only those facts relevant to the motion to dismiss currently before the Court.

§ 6(m) (the Illinois Constitution provides that the "powers and functions of home rule units shall be construed liberally"). Home rule units' powers, however, are not unlimited and should "relate to their own problems, not to those of the state or the nation," *Ampersand,* 338 N.E.2d at 18 (quoting Report of Local Government Committee, 7 Proceedings 1621). Thus, while "mindful of the liberal construction mandate," the Illinois Supreme Court has struck down home rule ordinances that "did not pertain to the government or affairs of the local unit." *Id.* at 18.

The Ordinance at issue in this case grants plaintiffs a private right of action to bring their complaints before a state tribunal. The Ordinance authorizes the Commission to determine, *inter alia,* when a complainant can file suit in a court of general jurisdiction and the time limits on a complainant's right to bring suit. A Cook County trial court, considering the same Ordinance at issue in this case, found it to be unconstitutional because it created a private right of action for sexual harassment and impermissibly burdened the judiciary by attempting to control or dictate procedures to the state judiciary. *See Lucas v. Zeta Int'l,* No. 96 M3 2687 (Cook Cy. Cir. Ct. Jan. 26, 1998) (attached to R. 19, Defs.' Mot. to Dismiss, Ex. B). The *Lucas* court relied on *Ampersand,* which explained that the administration of justice in Illinois is a matter of state, and not local, concern. *Ampersand,* 338 N.E.2d at 18. In *Ampersand,* the Illinois Supreme Court struck down a home rule county's ordinance that imposed filing fees in civil suits, which were used to finance the county law library. The court was unable to "accept defendants' argument that since the operation of the library is a local function so also is the imposition of the fee to support it. The payment of the fee under the ordinance is the price of admission to the courts of the State of Illinois and not to the Cook County Law Library." *Id.* at 18–19. The court stated that "[a]rticle VI of the 1970 Constitution does not contemplate nor does it authorize the exercise of any control over or permit the imposition

of a burden on the judicial system by any local entity." *Id.* at 18..

■ The *Lucas* court also relied on *City of Carbondale,* in which the Illinois Supreme Court stated that, while the concerns underlying a home-rule city's eminent domain ordinances were local in character, enforcement of the ordinance attempted to dictate procedures that state courts were to follow and therefore "impermissibly interfere[d] with the State judiciary system." *City of Carbondale v. Yehling,* 96 Ill.2d 495, 71 Ill.Dec. 683, 451 N.E.2d 837, 840 (1983). Applying these cases to the Ordinance, the *Lucas* court held that enforcement of the Ordinance impermissibly burdened the state judicial system. We agree with the well-reasoned opinion of our state court colleague in *Lucas.* Therefore, Count III is dismissed with prejudice.

In their response, Plaintiffs argue that, because sexual orientation discrimination is not within the scope of the Illinois Human Rights Act ("IHRA"), it is not preempted by the limitations found in the IHRA. Defendants, however, do not argue preemption and do not take issue with Cook County's ability to pass the Ordinance, only that the enforcement mechanism is invalid because it is unduly burdensome on the judiciary. In any case, we need not reach that issue. *See id.* at 841 ("It is unnecessary for us to discuss the question of the State's preemption since we have found that the method of enforcement ... goes beyond [the city's] home rule authority.").

### III. Assault and Battery Counts

#### A. Illinois Workers' Compensation Act

■ Defendants argue that Hakim's assault and battery claims are barred by the exclusivity provision of the Illinois Workers' Compensation Act ("IWCA"). Section 5(a) of the IWCA provides

No common law or statutory right to recover damages from the employer ...

or the agents or employees of ... [the employer] for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act.... 820 ILCS 305/5(a). The IWCA, therefore, bars an employee from bringing a common law cause of action against his employer unless he can prove that (1) the injury was not accidental; (2) the injury did not arise from his employment; (3) the injury was not received during the course of employment; or (4) the injury was not compensable under the IWCA. *Hunt–Golliday v. Metropolitan Water Reclamation Dist. of Greater Chicago,* 104 F.3d 1004, 1016 (7th Cir.1997) (citing *Meerbrey v. Marshall Field and Co., Inc.,* 139 Ill.2d 455, 151 Ill.Dec. 560, 564 N.E.2d 1222, 1226 (1990)). Hakim argues that, because the injury was not accidental, his assault and battery claims are not barred. We agree.

 Although a co-employee's intentional infliction of injuries may qualify as "accidental" within the meaning of the IWCA, "injuries which the employer or its alter ego intentionally inflicts upon an employee or which were commanded or expressly authorized by the employer" do not and, thus, are not barred. *Meerbrey,* 151 Ill.Dec. 560, 564 N.E.2d at 1226. In this case, Hakim alleges that Chaharbakhski was his manager, (Am. Compl. at Count III, ¶ 19) and intentionally committed assault and battery, "in furtherance of the defendants' business," (*id.* at Count IV, ¶ 31, Count V ¶ 30.) In addition, Hakim alleges that Chaharbakhski's actions were "subsequently ratified by the defendants who failed to take any action against Chaharbakhski after having knowledge of the conduct." (*Id.*) Furthermore, Hakim claims that Defendants acted with malice and a total disregard for Hakim's right to be free from the assault and battery. (*Id.* at Count IV, ¶ 32, Count V, ¶ 32.) Courts have recognized that management's knowl-

edge coupled with lack of follow-up action is equivalent to express authorization of injurious conduct. *Mobley v. Kelly Kean Nissan, Inc.,* 864 F.Supp. 726, 730 (N.D.Ill. 1993); *Cline v. General Elec. Capital Auto Lease, Inc.,* 757 F.Supp. 923, 931 (N.D.Ill. 1991). Therefore, the IWCA does not bar Counts IV and V and Defendants' motion to dismiss these counts is denied.[3]

### B. Preemption by the Ordinance

As seen above, the Ordinance unconstitutionally burdens the judiciary, and, thus, its enforcement provisions are invalid. Therefore, the Ordinance has no application in this case, and cannot preempt the assault and battery claims.

### IV. Supplemental Jurisdiction

 Finally, Defendants argue that Hakim's assault and battery claims and the Title VII claims do not arise out of a common nucleus of operative fact and therefore we should not exercise supplemental jurisdiction over these state claims. As long as a federal court has original jurisdiction of a claim, 28 U.S.C. § 1367(a) dictates that the court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." "A loose factual connection between the claims is generally sufficient." *Ammerman v. Sween,* 54 F.3d 423, 424 (7th Cir.1995). In the instant case, that requirement is met. The factual allegations underlying Hakim's assault and battery claims are relevant to his retaliation claim under Title VII. In his retaliation claim, Hakim alleges that, because he prepared and presented a statement regarding the hostile work environment to management, he "was subjected to physical threats, intimidation and verbal abuse from his manager, Chaharbakhski, who threatened Hakim with physical harm unless he im-

---

**3.** Because we conclude that the IWCA does not bar Hakim's assault and battery claims, we need not consider Hakim's additional argument that his injuries are not compensable under the IWCA.

mediately recanted his statement." (Am. Compl. at Count II, ¶ 34.) Similarly, his assault and battery claims are based on his allegation that Chaharbakhski engaged in a pattern of physically and verbally abusing him for two years. Thus, Hakim's claims exhibit the "loose factual connection" required for supplemental jurisdiction.

## CONCLUSION

For these reasons, we grant the defendants' motion to dismiss Count III (violation of the Ordinance) and deny the motion to dismiss Counts IV (battery) and V (assault). (R. 0–0; 18–1 and 32–2.) Defendants' answer will be due on or before February 28, 2000. The date for the filing of the joint status report is hereby reset to February 27, 2000. The parties are specifically requested to address whether it is appropriate to have all Plaintiffs' claims joined in one lawsuit in their status report. A status hearing will be held in open court on February 29, 2000 at 9:45 a.m.